IN THE UNITED STATES DISTRICT COURT U.S. DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA BRUNSWICK DIV.
STATESBORO DIVISION

FILED

2013 MAY 30 A 11: 09

CLERK
SO. DIST. OF GA.

DERRON JACKSON,

        Plaintiff,

v.

        CIVIL ACTION NO.: CV612-118

LARRY BREWTON,

        Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at Georgia State Prison in Reidsville, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983, contesting certain conditions of his confinement. Defendant filed a Motion to Dismiss. Plaintiff filed a Response. Defendant filed a Reply. For the reasons which follow, Defendant's Motion should be **GRANTED**.

## STATEMENT OF THE CASE

Plaintiff contends that Defendant Brewton placed him in administrative segregation without due process and denied Plaintiff privileges afforded to other inmates in administrative segregation. Plaintiff also contends that the cell in which he was housed was a fire hazard and had no running water, heat, or lights. Plaintiff contends that Defendant Brewton retaliated against him because Plaintiff filed a grievance against another officer.[1]

---

[1] Plaintiff's claims against Defendant stem from events allegedly occurring between October 1, 2011, through March 1, 2012. (Doc. No. 1, p. 5).

Defendant contends that Plaintiff's monetary damages claims against him in his official capacity should be dismissed. Defendant asserts that Plaintiff failed to exhaust his available administrative remedies regarding his Eighth Amendment claims. Defendant also asserts that Plaintiff fails to state a plausible claim against him. Defendant further asserts that he is entitled to qualified immunity. Defendant alleges that Plaintiff's Complaint should be dismissed based on Plaintiff's abuse of process.

## STANDARD OF REVIEW

Under a Rule 12(b)(6) motion to dismiss, a court must "accept[ ] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). "A complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" does not suffice. Ashcroft, 556 U.S. at 678.

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal punctuation and citation omitted). While a court must accept all factual allegations in a complaint as true, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. Id.

AO 72A
(Rev. 8/82)

## DISCUSSION AND CITATION TO AUTHORITY

### I.   Official Capacity Claims

A lawsuit against a prison official in his official capacity is no different from a suit against the government itself; such a defendant is immune. Smith v. Fla. Dep't of Corr., 318 F. App'x 726, 728 (11th Cir. 2008) (citing Powell v. Barrett, 496 F.3d 1288, 1308 & n.27 (11th Cir. 2007)). Plaintiff's monetary damages claims for alleged constitutional violations against the Defendant in his official capacity would be claims against the State of Georgia and are barred. This portion of Defendant's Motion should be granted.

### II.   Exhaustion of Available Administrative Remedies

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. (internal punctuation and citation omitted). A judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id.

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). 42 U.S.C. § 1997e(a) states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative

3

remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523. The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 541 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

In Turner v. Burnside, 541 F.3d 1097 (11th Cir. 2008), the Eleventh Circuit clarified how the lower courts are to examine the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376-77.

AO 72A
(Rev. 8/82)

Standard Operating Procedure ("SOP") IIB05-0001 sets forth the three (3) steps an inmate must complete under the Georgia Department of Corrections' grievance procedure. First, an inmate must file an informal grievance "no later than 10 calendar days from the date" the inmate was aware "of the facts giving rise to the grievance." (Doc. No. 20-3, p. 6). An inmate is to be given a written response to his informal grievance within ten (10) calendar days of the counselor's receipt of the inmate's informal grievance. (Id. at p. 7). If the inmate is dissatisfied with the resolution of his informal grievance, he is to file a formal grievance within five (5) days of his receipt of the written resolution of his informal grievance. (Id. at pp. 7-8). Once an inmate receives the Warden's response to his formal grievance and is dissatisfied with that response, he has five (5) business days to file an appeal with the Commissioner. (Id. at p. 9). The Commissioner's Office has 90 calendar days after receipt of the appeal to respond. (Id. at p. 10). These time limits can be waived for "good cause." (Id.). A grievance filed out-of-time or for otherwise not being in compliance with this Procedure will be rejected. (Id. at p. 5).

Defendant contends that Plaintiff has filed numerous grievances while housed at Georgia State Prison, but he exhausted his available remedies as to only one (1) issue, which was based on his contention that officers failed to respond to his calls for help when he experienced chest pains, during the relevant period (between October 1, 2011, and March 1, 2012). Defendant avers that, other than this exhausted grievance, Plaintiff failed to file a grievance or otherwise exhaust his available administrative remedies regarding his conditions of confinement claims. Plaintiff asserts that he

AO 72A
(Rev. 8/82)

exhausted his available administrative remedies for all of his claims against Defendant, including his Eighth Amendment conditions of confinement claims.

During the relevant period, Plaintiff filed five (5) grievances. Of these grievances, only three (3) concerned claims falling under the "conditions of confinement" category. (Doc. No. 20-4, p. 2). Plaintiff filed Informal Grievance Number 109805 on January 25, 2012, in which he asserted that Defendant and another officer placed his "life [and] limb at risk of being killed at the hands of other inmates." (Doc. No. 26-1, p. 9). Plaintiff also asserted that he had filed another grievance on a previous date in which he alleged that an officer was trying to have sexual relations with him. This informal grievance was rejected because Plaintiff presented multiple issues and because he failed to contain his grievance in the space provided. (Id.). Plaintiff did not resubmit this informal grievance or appeal the rejection. Plaintiff then filed Informal Grievance Number 112629 on February 23, 2012, and alleged that he woke up on the floor after having chest pains, that the officer on duty did not make security rounds, and that the cells lacked call buttons. (Doc. No. 26-1, pp. 14-15). Plaintiff filed a formal grievance as well as an appeal as to the issues raised in this informal grievance. (Id. at pp. 1, 11-12). Plaintiff then filed Informal Grievance Number 115672 on April 2, 2012. In this informal grievance, Plaintiff averred that he had not received a response from a grievance he filed on March 1, 2012. This informal grievance was rejected as being untimely filed. (Id. at p. 32). Plaintiff filed nothing in response to this rejection.

A review of the record reveals that Plaintiff did not exhaust his administrative remedies regarding his conditions of confinement claims against Defendant.[2] While

---

[2] It appears that Plaintiff failed to exhaust his administrative remedies as to all of his claims against Defendant. However, Defendant failed to move for dismissal of all of Plaintiff's claims against him on this

AO 72A
(Rev. 8/82)

Plaintiff managed to exhaust his administrative remedies as to certain contentions against Defendant, the contention that Defendant placed Plaintiff's life and limb in danger was dismissed from this cause of action by Order dated March 28, 2013. (Doc. No. 19, adopting Doc. No. 13). Plaintiff has not initiated, let alone exhausted, the conditions of confinement claims against Defendant which the Court sanctioned. This portion of Defendant's Motion should be **granted**.

## III.    Due Process Claims

Defendant asserts that Plaintiff does not allege facts sufficient to show that he has a constitutionally protected liberty interest to which due process protections apply. Defendant alleges that Plaintiff makes no allegation that the conditions in administrative segregation differ from those in the general population. Defendant also alleges that Plaintiff fails to set forth facts indicating that he was singled out for harsher treatment than other inmates housed in administrative segregation. Defendant asserts that Plaintiff fails to show that being placed in administrative segregation imposed an atypical and significant hardship such that constitutional protections were triggered. Defendant contends that Plaintiff offers nothing more than a conclusory statement that he was not afforded constitutionally adequate process. Defendant asserts that Plaintiff fails to allege that he was denied water when he requested it, that he was without a toilet, that he was denied showers, or that he suffered any injury as a result. Defendant also asserts that, in the same paragraph in which Plaintiff states he was housed in a certain cell and that it was a fire hazard, he states that he was assaulted because he was being moved on a daily basis. In addition, Defendant contends that Plaintiff does

---

basis, and it would be unfair to Plaintiff for the undersigned to recommend that Defendant's Motion be granted entirely on this ground.

AO 72A
(Rev. 8/82)

not allege that Defendant made the decision to house Plaintiff in a particular cell or that Defendant was aware of the alleged conditions in the cell.

In response, Plaintiff states that he was placed in isolation arbitrarily, which deprived him of procedural and substantive rights. Plaintiff asserts that Defendant bypassed clearly established constitutional protections, which constitutes inadequate process. Plaintiff also asserts that the deprivation of liberty and property and the callous disregard for his rights subjected him to an atypical and significant hardship. Plaintiff contends that he was placed in an inoperable cell without an adjudication of guilt. Plaintiff also contends that there was no heat or ventilation, lights, or running water in his cell in administrative segregation, which are conditions not found in general population.

## A.    Procedural Due Process

An inmate states a cognizable claim for the deprivation of his procedural due process rights under the Fourteenth Amendment when he alleges the deprivation of a constitutionally protected liberty or property interest, state action, and constitutionally inadequate process. Shaarbay v. Palm Beach Co. Jail, 350 F. App'x 359, 361 (11th Cir. 2009) (citing Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994)). Constitutionally adequate process requires compliance with the minimum due process protections accorded to an inmate in prison disciplinary proceedings: (1) the right to receive written notice of the charges against him at least 24 hours before his hearing; (2) the right to call witnesses and present documentary evidence, where doing so would not be unduly hazardous to institutional safety or correctional goals; and (3) the right to receive a written statement setting forth the disciplinary committee's findings of

AO 72A
(Rev. 8/82)

fact. <u>Asad v. Crosby</u>, 158 F. App'x 166, 173 (11th Cir. 2005) (citing <u>Wolff v. McDonnell</u>, 418 U.S. 539, 563-66 (1974)).

Plaintiff fails to allege any facts leading to the plausibility that his placement in administrative segregation was punitive in nature. In fact, this Court has noted that a plaintiff's placement in administrative segregation is a non-punitive action. (Case Number CV512-1, Doc. Nos. 52, 60). Because Plaintiff was not placed in punitive segregation and was not charged with any infraction, there was no attendant duty, under due process principles, to notify him of any charges or reasons for his placement in segregation. Plaintiff cannot sustain a procedural due process claim, and this portion of Defendant's Motion should be **granted**.

## B. Substantive Due Process

"The Due Process Clause protects against deprivations of 'life, liberty, or property without due process of law.'" <u>Kirby v. Siegelman</u>, 195 F.3d 1285, 1290 (11th Cir. 1999) (quoting U.S. CONST. AMEND. XIV). The Supreme Court has identified two situations in which a prisoner can be deprived of liberty such that the protection of due process is required: (1) there is a change in the prisoner's conditions of confinement so severe that it essentially exceeds the sentence imposed by the court; and (2) the State has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Id.</u> at 1290-91 (quoting <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995)).

In <u>Sandin</u>, the United States Supreme Court addressed whether the punishment inmate Conner received for a disciplinary violation was sufficient to invoke a liberty

9

interest protected by the Due Process Clause. 515 U.S. at 472. Following a disciplinary conviction, Conner received 30 days' disciplinary segregation in a Special Housing Unit. Id. at 475. After noting that the segregation was a form of punishment, the Court concluded that it was not a dramatic departure from the conditions of Conner's indeterminate sentence. Id. at 485. The Court determined that the conditions of disciplinary segregation at the prison where Conner was incarcerated were virtually indistinguishable from the conditions of administrative segregation and protective custody. Id. at 486. Also, the Court noted that the conditions of disciplinary segregation were not markedly different from the conditions in general population. Id. The Court concluded that the conditions of disciplinary segregation did not impose an "atypical, significant deprivation in which a State might conceivably create a liberty interest." Id. Thus, the Court determined that Conner was not entitled to due process protection. Id. at 487.

Plaintiff does not make sufficient allegations revealing that the conditions in administrative segregation were any different than those in the general population areas. Thus, Plaintiff fails to show that the conditions in administrative segregation imposed an atypical or significant deprivation of a liberty interest. This portion of Defendant's Motion should also be **granted**.

## IV.    Equal Protection Claim

Defendant avers that Plaintiff does not identify any "others" with whom he is similarly situated, let alone allege that he was treated differently than they. (Doc. No. 20-1, p. 19). Defendant asserts that Plaintiff does not suggest that Defendant committed any act or omission against Plaintiff's constitutionally protected interests.

AO 72A
(Rev. 8/82)

Defendant also asserts that Plaintiff merely alleges that he was treated differently from others in administrative segregation.

Plaintiff contends that Defendant failed to provide him with procedural due process protections "in which he's similarly situated to any other prisoner[;] however[,] Plaintiff had not committed an offense in which a disciplinary infraction such as isolation may be imposed." (Doc. No. 24, p. 7). Plaintiff also contends that Defendant withheld privileges from him while he was in the special management unit and that inmates in the special management unit are supposed to have the same privileges as the inmates in general population.

In order to state an equal protection claim, a plaintiff should allege "sufficient facts to indicate (1) that he was similarly situated with others who received more favorable treatment, and (2) that his discriminatory treatment was based on a constitutionally protected interest such as race." Mack v. City of High Springs, 486 F. App'x 3, 7 (11th Cir. 2012) (citing Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001)). Plaintiff fails to allege sufficient facts demonstrating that Defendant treated him differently because of his race or any other constitutionally protected interest. Indeed, Plaintiff only alleges in a conclusory manner that Defendant discriminated against him. Such conclusory allegations, however, are not sufficient to state a proper claim. Twombly, 550 U.S. at 555 ("a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). This portion of Defendant's Motion should be **granted**.

AO 72A
(Rev. 8/82)

## V. Retaliation Claim

Defendant contends that Plaintiff makes threadbare allegations that Defendant retaliated against him because Plaintiff filed a sexual harassment claim against another officer. Defendant also contends that Plaintiff's vague, conclusory allegations do not amount to anything more than Plaintiff's personal belief that he is the victim of retaliation. Defendant further contends that Plaintiff makes no allegation that Defendant acted in a way which deterred Plaintiff from engaging in constitutionally protected speech.

"To state a First Amendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (internal citations omitted). Rather, "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech." Id. A prisoner can establish retaliation by demonstrating that the prison officials' actions were "the result of his having filed a grievance [or lawsuit] concerning the conditions of his imprisonment." Id.

In Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005), the Eleventh Circuit noted that, "[t]o state a retaliation claim, the commonly accepted formulation requires that a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." The second prong of this test was at issue in Bennett. The Eleventh Circuit adopted an objective standard when evaluating this prong, in accord with other Circuits, and held that "[a] plaintiff suffers adverse action if the

AO 72A
(Rev. 8/82)

defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Id. at 1254.

At best, Plaintiff may have set forth sufficient facts to establish that he filed a grievance against another officer and that Defendant may have been aware of this filing. However, Plaintiff fails to establish any facts which reveal that, even if Defendant retaliated against him for the exercise of his First Amendment rights, Defendant's actions would have prevented or deterred Plaintiff or any other inmate of ordinary firmness from exercising his First Amendment rights. Plaintiff has filed at least three (3) lawsuits, including this one, since the time he alleges Defendant retaliated against him.[3] This portion of Defendant's Motion should be **granted**.

It is not necessary to address the remaining portions of Defendant's Motion.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendant's Motion to Dismiss be **GRANTED**. It is also my **RECOMMENDATION** that Plaintiff's Complaint be **DISMISSED**.

SO REPORTED and RECOMMENDED, this _30th_ day of May, 2013.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

---

[3] Case Numbers CV612-118 (this cause of action), CV612-119, and CV612-120.

AO 72A
(Rev. 8/82)